IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PLANT GENETIC SYSTEMS, N.V.,    )
                                )
            Plaintiff,          )
                                )
      v.                        )        1:95CV741
                                )
MYCOGEN PLANT SCIENCES, INC.,   )
and AGRIGENETICS, INC.,         )
                                )
            Defendants.         )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is Defendants' Motion for
Determination of Exceptional Case and Award of Fees, Costs and
Interest (Doc. 356). Defendants have filed a memorandum in
support of their motion (Doc. 357), Plaintiff has filed a
response (Doc. 376), Defendants have filed a reply (Doc. 380),
and Plaintiff has filed a surreply (Doc. 386). For the reasons
set forth herein, Defendants' Motion will be granted.

**I.   Background**

Plaintiff[1] originated this action on October 18, 1995,

_____

[1] Plaintiff, which operated under the name Plant Genetic
Systems, N.V., when the complaint was filed, has subsequently
been acquired by Bayer Bioscience N.V. To avoid confusion, this
court will simply refer to "Plaintiff" instead of "Plant
Genetics" or "Bayer."

alleging that Defendants[2] had infringed Patent No. 5,254,799 (the '799 patent).  The complaint was later amended to add an infringement claim for Patent No. 5,545,565 (the '565 patent). This case was the first of several filed by the parties and related entities regarding patents for insect resistant crop seeds.

This action was litigated until December 2, 1998, at which time it was stayed pending the resolution of an action filed in the District of Delaware.  In the Delaware action, Plaintiff asserted infringement of the same two patents at issue here. This case remained stayed for the next four years until 2002, at which point Plaintiff amended its complaint to withdraw the infringement claim for the '799 patent.  (See generally Docs. 273-276.)  After the Delaware case was dismissed, a trial date for this case was set for April 2003.  The proceedings were once again delayed, however, because additional related litigation had been filed in the Eastern District of Missouri and in another

---

[2] Ciba Seeds and Mycogen Plant Science, Inc., were originally named as Defendants.  Plaintiff amended its complaint on August 13, 1996, to add Agrigenetics, Inc. as a Defendant. (See Mem. in Supp. of Mot. for Stay Pending Appeal (Doc. 306) at 2.)  Agrigenetics is a subsidary of Mycogen Plant Science, Inc. Ciba Seeds was dismissed from the case on April 20, 2000.  (See Order (Doc. 263).)

court of this district, prompting a second stay pending the resolution of the related cases.

The related litigation in the Middle District of North Carolina (the "Aventis litigation"), 1:00CV463, was initiated in May 2000 by Aventis Cropscience, N.V. - now known as "Bayer," the current Plaintiff in this action - against Pioneer Hi-Bred International, Inc. Dow Agrosciences LLC ("Dow") was later added as a defendant. Dow is the parent company of the remaining Defendants in this action, Mycogen Plant Science, Inc., and Agrigenetics, Inc. The plaintiff in the Aventis litigation asserted infringement of the same patents at issue in this case, as well as U.S. Patent No. 5,767,372 (the '372 patent) and U.S. Patent No. 6,107,546 (the '546 patent).

The related litigation in the Eastern District of Missouri (the "Missouri litigation") was filed in December 2000 by Monsanto against Bayer, seeking a declaratory judgment that Monsanto's line of insect resistant crop seeds did not violate the '799 patent, the '565 patent, the '372 patent, or the '546 patent. Monsanto also sought an order declaring all of the patents invalid and unenforceable based on inequitable conduct. Monsanto claimed that Bayer knowingly submitted false affidavits to the Patent and Trademark Office ("PTO") while prosecuting the

-3-

patents.  Bayer responded by counterclaiming that Monsanto's product violated the four challenged patents.  On December 29, 2002, the court granted summary judgment in favor of Monsanto, finding that Bayer had engaged in inequitable conduct before the PTO in procuring the relevant patents.  See <u>Monsanto Co. v. Bayer Bioscience, N.V.</u>, Case No. 4:00CV01915 ERW, 2006 U.S. Dist. LEXIS 97254, at *154 (E.D. Mo. Aug. 28, 2006).  On appeal, the Federal Circuit reversed and remanded the case for trial, finding that factual issues existed that the court had not appropriately considered.  <u>Id.</u>  Bayer then dismissed its infringement counterclaims for the '799, '372 and '546 patents, leaving only its counterclaim with regard to the '565 patent.  A jury trial was then held with regard to this remaining counterclaim, with the jury finding in favor of Monsanto.  <u>Id.</u> at *154-55.  After this jury verdict, Monsanto's declaratory judgment claim based on inequitable conduct still remained for disposition.  To address this claim, the court held a bench trial regarding the validity of all four of the relevant patents in light of Bayer's alleged inequitable conduct.  <u>Id.</u> at *155.

Following the bench trial, the court found "by clear and convincing evidence that," regarding the '799, '372, and '546 patents, "[Plaintiff] knew the statements in [its] declaration to

-4-

the PTO examiner were false and misleading and [it] knowingly made the statements with the specific intent to deceive or mislead the PTO examiner." Id. at *162. The court further found the statements to be "highly material," and that accurate statements "would have refuted Bayer's claims." Id. at *162-63. With regard to the '565 patent, the court also found that Bayer had falsely submitted highly material information to the PTO with the specific intent to deceive. Id. at *165-66. With regard to materiality, the court found that "had [Bayer] made a truthful statement to the PTO examiner . . . the information would by itself establish a prima facie case of unnpatentability [sic]." Id. at *165. The court thus held all four patents invalid and unenforceable.

After the court entered judgment against Bayer, Monsanto filed a Motion for Exceptional Case and Award of Attorneys' Fees. See Monsanto Co. v. Bayer Cropscience, N.V., No. 4:00CV01915 ERW, 2007 WL 1098504, at *1 (E.D. Mo. Apr. 12, 2007). The court found that Monsanto was entitled to $138,880.46 in costs as the prevailing party, and the court also awarded $8,375,181.64 in attorneys' fees, finding the case to be "exceptional" under 35 U.S.C. § 285. Id. at *34. This award of costs and attorneys'

fees was upheld on appeal.  See Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229 (Fed. Cir. 2008).

Once the litigation in the Eastern District of Missouri had been finally resolved, the stay was lifted in the Aventis litigation in this district and judgment was entered against Bayer, which had acquired Aventis in 2001.  See Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc., 1:00CV463, 2010 WL 2306677, at *2 (M.D.N.C. June 8, 2010).  The parties entered into a Consent Order, in which the "parties agreed that based upon the collateral estoppel effect of the Federal Circuit's orders, each of the patents-in-suit is unenforceable."  Id.  Like Monsanto in the Missouri litigation, Dow then filed a motion seeking costs and attorneys fees based on the exceptional case provision of 35 U.S.C. § 285.  In response, Bayer did not contest the collateral estoppel effect of the Missouri court's exceptional case holding, but instead, argued that the court should exercise its discretion to decline an award of attorneys' fees, or to significantly reduce them, despite the exceptional case finding.  Id. at *3.  The court rejected this request and awarded attorneys' fees and costs to Dow in the amount of $4,898,028.75.  Id. at *8.

Although this remaining case was the first to be filed, it is now the last to be resolved. The only issue remaining for resolution is Defendants' Motion for Determination of Exceptional Case and Award of Fees, Costs and Interest (Doc. 356). In order to resolve this motion, the parties stipulate that the court must determine the following issues:

> (1) whether this case is exceptional pursuant to 35 U.S.C. § 285; (2) whether Mycogen is entitled to recover its attorneys' fees and expenses under 35 U.S.C § 285, and if so, in what amount; (3) in what amount Mycogen is entitled to recover costs as the prevailing party;[3] and (4) whether and in what amount Mycogen is entitled to recover interest on the amount of any legal fees and costs it may recover.

(See Joint Statement of Issues Remaining for the Court to Decide (Doc. 354) at 2.)[4] This court will address each of these issues in turn.

---

[3] Defendants have included costs as a subset of the fees requested under 35 U.S.C. § 285. In their Motion for Fees and Costs, Defendants state that they "will also be submitting a bill of costs to the Clerk of the Court, pursuant to Federal Rule of Civil Procedure 54(d)(1). . . . [Defendants] note[] that the costs that [Defendants] will seek pursuant to its Rule 54(d)(1) bill of costs are a subset of the costs that [they] seek[] pursuant to the instant Motion for Fees and Costs." (Defs.' Br. in Supp. of Mot. for Determination of Exceptional Case and Award of Fees, Costs and Interest ("Defs.' Br.") (Doc. 357) at 19 n.42.)

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-7-

**II. Whether this case is exceptional pursuant to 35 U.S.C. § 285**

Although the parties agree that collateral estoppel applies for purposes of the invalidity of the '565 patent, they disagree as to the collateral estoppel effect of the Missouri Court's finding of exceptional case. This court must therefore determine whether collateral estoppel applies in this regard, and, if not, this court must make an independent determination of whether this case should be deemed exceptional pursuant to 35 U.S.C. § 285.

Application of collateral estoppel, or issue preclusion, "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes." Montana v. United States, 440 U.S. 147, 153 (1979). Before this court can apply collateral estoppel to an issue or fact, the party seeking the application of collateral estoppel must demonstrate

> that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004).

Plaintiff argues that elements one through three are lacking because the Missouri litigation involved four patents - Nos. '565, '799, '372, and '546 - while this case originally involved only Nos. '565 and '799, with No. '799 being dismissed in 2002.[5] (See Pl.'s Br. in Opp'n to Defs.' Mot. for Determination of Exceptional Case and Award of Fees, Costs and Interest ("Pl.'s Br.") (Doc. 376) at 9.) Although Plaintiff contests elements one through three, Plaintiff's position is predicated on an initial finding that the issue presently before this court is not identical to the issue decided by the Missouri court (the first

---

[5] This court retains jurisdiction over the '799 patent for purposes of the exceptional case determination. See Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229, 1242-43 (Fed. Cir. 2008). Plaintiff contends that because another judge of this court - in an order dismissing the '799 patent from the litigation - did not address whether jurisdiction would be retained for purposes of an exceptional case determination, the court thereby implicitly rejected Defendants' contention that they would only stipulate to the dismissal of the '799 patent if they retained their right to pursue an exceptional case determination with regard to that patent. (See Pl.'s Br. in Opp'n to Defs.' Mot. for Determination of Exceptional Case and Award of Fees, Costs and Interest (Doc. 376) at 11.) That is a strained interpretation of the court's order. Furthermore, it was unnecessary for Defendants to seek this guarantee in exchange for stipulating to the dismissal of the '799 patent, as the court automatically retained jurisdiction of the '799 patent for purposes of the exceptional case determination. See Monsanto Co., 514 F.3d at 1242-43. Indeed, it is unclear whether the court could have avoided jurisdiction over this issue even had that been its intention. See id.

element of the <u>Microsoft</u> test).  If this court should find that
the first element is met, Plaintiff has not presented an argument
as to elements two and three that would independently support a
finding that collateral estoppel should not apply.  In support of
its contention that the issues are not identical, Plaintiff
argues that "[t]he Missouri Court's memoranda and orders make it
clear that the Court based its exceptional case finding on
**cumulative acts** of inequitable conduct committed by Bayer's
predecessor in interest, PGS, in connection with **all four of
those patents**."  (<u>Id.</u> (emphasis in original).)

Defendant counters that the Missouri court found "clear and
convincing evidence of multiple acts of inequitable conduct and
determin[ed] that those acts were all made in connection with
procuring the '799 and '565 patents at issue in this case."
(Reply Br. in Supp. Defs.' Mot. for Determination of Exceptional
Case and Award of Fees, Costs, and Interest ("Defs.' Reply Br.")
(Doc. 380) at 8.)  Defendants further argue that

> The fact that the Missouri Action also included the
> '372 and '546 patents is of no moment: Bayer's culpable
> acts, as found and relied on by the Missouri Court, all
> occurred before the '372 and '546 patents were filed in
> 1995.  Further, the Missouri Court identified no
> incremental act of inequitable conduct specific to the
> '372 and '546 patents not applicable to the '799
> patent.  Nor has Bayer.

-10-

((Id.) (citation omitted).  This court has reviewed the relevant memoranda and orders from the Missouri litigation and agrees with Defendants' characterization of the findings of the Missouri court.  None of the facts found relevant by the court to the determination of inequitable conduct were made in connection with the '372 or '546 patents to the exclusion of the '799 patent. (See Defs.' Br. (Doc. 357-1) at 93-96.)  Instead, the court found that the conduct which invalidated the '372 and '546 patents was the exact same conduct that was originally used to procure, and ultimately to invalidate, the '799 patent.  (Id.)  The court also found that all of the inequitable conduct related to the '565 patent was relevant to that patent alone.  (Id. at 96-99.)

This court therefore finds the first element of collateral estoppel - whether the issue or fact is identical to the one previously litigated - is met in this instance.  The Missouri court found that Bayer engaged in inequitable conduct before the PTO in prosecuting patent Nos. '565 and '799.  The fact that the Missouri court found that the same inequitable conduct also invalidated patent Nos. '373 and '546 does not change the nature of the Missouri court's inquiry.  Collateral estoppel thus

-11-

applies[6] and Plaintiff is barred from arguing that this case is not exceptional pursuant to 35 U.S.C. § 285.[7]

_____

[6] This court notes Plaintiff's Suggestion of Subsequently Decided Authority (Doc. 387) and finds that it does not alter this court's collateral estoppel analysis. In Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011), the Federal Circuit clarified the standards required for a finding of inequitable conduct. Specifically, the court held, with some exceptions, that for a district court to hold that a party engaged in inequitable conduct the court must find "but-for" materiality and a specific intent to deceive. See id. at 1290-91. As previously noted, the Missouri court found Bayer to have acted with the specific intent to deceive the PTO. See Monsanto Co. v. Bayer Bioscience, N.V., Case No. 4:00CV01915 ERW, 2006 U.S. Dist. LEXIS 97254, at *162, 165-66 (E.D. Mo. Aug. 28, 2006). The court also found Bayer's misrepresentations to be "highly material," noting that truthful representations would have destroyed Bayer's case for patentability. Id. The Missouri court's findings thus comport with the new standard for inequitable conduct outlined in Therasense, Inc., rendering Plaintiff's suggestion of subsequently decided authority inconsequential to this court's present analysis.

[7] In the alternative, even if collateral estoppel does not apply, this court finds that Plaintiff's inequitable conduct before the PTO warrants an exceptional case designation. The parties have stipulated to the collateral estoppel effect of the Missouri court's inequitable conduct finding. (See (Doc. 354) at 2.) The Missouri court's detailed, ninety-nine page ruling contains abundant evidence of Bayer's inequitable conduct. Importantly, the Missouri court found by clear and convincing evidence that Bayer made material misrepresentations to the PTO in connection with patent Nos. '565 and '799 with the specific intent to deceive. These findings, which the parties stipulate are binding on this court, provide clear and convincing evidence allowing this court to designate this case as exceptional.

-12-

III. **Whether Mycogen is Entitled to Recover Its Attorneys' Fees and Expenses under 35 U.S.C. § 285, and if so, in What Amount**

a.  **Should Attorneys' Fees be Awarded?**

"Deciding a motion for attorney fees under 35 U.S.C. § 285 [] requires a two-step analysis.  The district court must determine whether the case is 'exceptional;' if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party."  J.P. Stevens Co. v. Lex Tex, Ltd., 822 F.2d 1047, 1050 (Fed. Cir. 1987).  A "reasonable" fee may be awarded in order to "compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  Automated Bus. Cos., Inc. V. NEC Am., Inc., 202 F.3d 1353, 1355 (Fed. Cir. 2000).  The party filing a motion for attorneys' fees bears the burden of establishing the reasonableness of a requested rate. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990).

Plaintiff argues that even if this court determines this to be an exceptional case under 35 U.S.C. § 285, it should exercise its discretion and decide not to award attorneys' fees in this instance.  (See Pl.'s Br. (Doc. 376) at 13-14.)  In support of this argument, Plaintiff cites a number of cases in which a district court refused to grant an award of fees even though the court had found the case to be exceptional under 35 U.S.C. § 285.

-13-

See id. Those cases are distinguishable from this one, and in the two cases most directly on point - the Missouri litigation and the Aventis litigation - the court granted a substantial fee award. In J.P. Stevens Co. v. Lex Tex, Ltd., cited by Plaintiff, the district court listed seven specific factors that it found to weigh against an award of attorneys' fees. 822 F.2d at 1049. Among these factors, the court noted that the losing party was "required to litigate to obtain a ruling that it had purged an earlier misuse," and that they "reasonably relied upon a number of experts' opinions regarding the materiality" of a patent. Id. No similar factors are present in this case. Plaintiff also cites Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed. Cir. 1987) and Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804 (Fed. Cir. 1990). Contrary to this case, however, there was no exceptional case determination made in either of those cases cited by Plaintiff. See Gardco Mfg., 820 F.2d at 1215; Consol. Aluminum, 910 F.2d at 813.

Finally, Plaintiff cites McKesson Info. Solutions, Inc. v. Bridge Med., Inc., No. Civ. S-02-2669 FCD KJM, 2006 U.S. Dist. LEXIS 63589, at *6 (E.D. Cal. Sept. 6, 2006), in which a district court declined to award attorneys' fees despite making an exceptional case determination. The court noted several factors

-14-

in support of its determination not to award fees, including the closeness - or non-frivolousness - of the losing party's position as well as the fact that neither the losing party nor its predecessor had been involved in the inequitable conduct before the PTO. See id. at *19-20. In contrast, the Missouri court specifically noted that whether inequitable conduct occurred was not a close issue, (see generally Defs.' Br., Ex. 1 (Doc. 357-1)), and Bayer's predecessor did itself engage in the relevant inequitable conduct. See Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, 2010 WL 2306677, at *3 n.4.

Ultimately, this court finds persuasive the reasoning of the district courts in the related litigation. Furthermore, as Defendants note, "The Federal Circuit has generally 'upheld findings of exceptionality' warranting a fee award 'when the patentee has procured its patent in bad faith (i.e., committed inequitable conduct before the Patent Office),' i.e., the exact wrongful conduct of Bayer at issue here." (Defs.' Reply Br. (Doc. 380) at 11 (quoting Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003)).) This case marked Plaintiff's first attempt to enforce rights under a patent obtained by inequitable conduct. This court sees no justification for departing from the reasoned analysis utilized by other courts to

-15-

grant an award of attorneys' fees in related litigation. This court will thus award attorneys' fees to Defendants pursuant to 35 U.S.C. § 285.

**b. Amount**

Defendants request attorneys' fees in the amount of $5,321,463.03.[8] (See Defs.' Reply Br. (Doc. 380) at 6.) In support of this fee request, Defendants have submitted thousands of pages of itemized fees and costs in the form of declarations. (See, e.g., (Docs. 359-2, 360-1, 361-1, 362-1).) Defendants further justify this requested fee award by noting the complex nature of this case and the patents involved. (See Defs.' Br. (Doc. 357) at 16-18.)

Plaintiff argues that if this court chooses to award attorneys' fees, then the award should be drastically reduced from the amount requested by Defendants. (See Pl.'s Br. (Doc. 376) at 16.) Plaintiff alleges that "Mycogen has not exercised billing judgment in many respects, warranting both specific and

---

[8] Defendants originally requested $5,258,028.14. (See Defs. Br. (Doc. 357) at 14.) In their reply, however, they amended this amount to reflect additional time billed and the deletion of certain fees that Plaintiff had argued in its response were improper. (See Defs.' Reply Br. (Doc. 380) at 6; Defs.' Reply Br., Ex. 3, Pt. 1 (Doc. 381-1) at 3-6.)

-16-

general reductions." (Id.) Specifically, Plaintiff raises the following issues with regard to Defendants' billing:

1) <u>Defendants' substitution of Orrick, Herrington & Sutcliffe LLP ("Orrick") for Lyon & Lyon LLP as lead counsel in 1999</u>.

This action was stayed when Orrick was substituted for Lyon & Lyon and remained stayed until 2002. When Orrick was substituted as counsel during this stay, however, Plaintiff claims that Orrick "spent countless hours trying to get up to speed." (Id.) Plaintiff claims that Orrick billed $105,351.25 during this time period for "duplicative learning curve type work." (Id. at 16-17.) Plaintiff then claims that Orrick repeated this learning curve type work again after the stay was lifted in 2002, charging Defendants $84,123.00 in fees. (Id. at 17.) Plaintiff argues any award of attorneys' fees should not include payment for these duplicative efforts. (Id.)

2) <u>Time billed for Orrick's attempts to recover files and billing statements from defunct Lyon & Lyon servers</u>.

Plaintiff claims that even though Defendants requested fees in their original answer and counterclaims, they failed to retain Lyon & Lyon's original billing statements and instead allowed Orrick to bill $63,305.00 in an attempt to "recover Lyon & Lyon

-17-

files from defunct servers in anticipation of a fees motion."
(Id. at 18.)  Plaintiff claims that all of this $63,305.00 should
be excluded from any fee award.[9]  (Id.)

     3)    <u>Defendants' "recovered" billing statements from Lyon &</u>
<u>Lyon</u>.

     Plaintiff claims there is a discrepancy between the
"recovered" billing statements from Lyon & Lyon covering the time
period 1995 through September 1997 and the "original" billing
statements for the period from September 1997 until Orrick was
substituted as counsel.  (Pl.'s Br. (Doc. 376) at 18-19.)
Specifically, Plaintiffs claim that the "original" billing
records show a ten-percent, negotiated, across-the-board fee
discount at the end of each bill while the "recovered" billing
statements do not reflect a discount.  (Id. at 19.)  The total
amount billed from 1995 to September 1997 was $1,216,292.00.
Plaintiff requests that this amount be reduced by ten-percent, or
$121,629.00.  (Id.)

_____

   [9] Defendants, in their reply, acknowledge that Plaintiff
should not have to compensate Defendants for these specific fees.
(See Defs. Reply Br. (Doc. 380) at 17.)  Defendants, however,
claim that only $45,061.87 was billed for these recovery efforts,
not $63,305.00.  Defendants have thus deducted $45,061.87 from
their final fee request.  (See id.)  Having reviewed the billing
records associated with the recovery efforts, this court agrees
that Defendants have subtracted a proper amount from their final
fee request.

Defendants respond by noting:

> First, Bayer has no support other than speculation that invoices prior to September 1997 were discounted by any percentage, let alone by 10%. Second, recovered invoices for the period July 31, 1998 to August 31, 2001, corresponding to the original invoices for those dates, show the same 10% discount as the original invoices. See Declaration of Yvette Williams at ¶ 7, attached hereto as Ex. 6. The evidence shows that the 10% discount did not begin until July 31, 1998, and Bayer's request for a 10% discount on recovered invoices is unsupportable. Id. at ¶ 6.

(Defs.' Reply Br. (Doc. 380) at 17.)  This court finds Defendants' argument persuasive in this regard and will thus decline to adopt Plaintiff's requested 10% reduction.

   4)   Allegedly undocumented fees disguised as "outside services" or "associate services."

   Plaintiff claims that Lyon & Lyon and Orrick charged Defendants $65,772.00 and $68,886.00, respectively, for services performed by law firms in Washington D.C., North Carolina, and elsewhere, and that Lyon & Lyon and Orrick did not sufficiently document these fees.  (Pl.'s Br. (Doc. 376) at 19-20.)  Plaintiff claims that due to this lack of documentation the court should deduct both of these amounts from any fee award.[10]  (Id. at 20.)

---

   [10]  Defendants have provided additional documentation in support of these particular fees in an exhibit attached to its reply.  (See Defs.' Reply Br. (Doc. 380) at 14 n.11.)  This court finds these fees to be reasonable in light of this additional documentation.

5) <u>Fees associated with Defendants unsuccessful Motion to Dismiss or Transfer</u>.

Plaintiff claims that Defendants should not be allowed to recover any of the $53,255.00 billed for work on this motion. (<u>Id.</u>)  Plaintiff claims Defendants should not recover fees associated with this motion because it was denied and because Plaintiff claims it to have been "over-briefed."  (<u>Id.</u>)  This court finds Plaintiff's argument in this regard to be conclusory and unpersuasive.

6) <u>General billing "deficiencies, inefficiencies, and improprieties."</u>

Plaintiff states that because Defendants have submitted nearly 2,000 pages of billing records, which they claim to be riddled with errors, this court should impose a significant general percentage reduction to the claimed fees. (<u>Id.</u> at 21-22.)

7) <u>Heavily redacted, block, and vague time entries</u>.

Plaintiff argues that Defendants' excessive redactions make it impossible to determine whether the sought fees are indeed reasonable and necessary. (<u>Id.</u> at 22-23.)  Plaintiff requests no less than a fifteen percent reduction to account for the excessive redaction. (<u>Id.</u> at 23.)  Plaintiff also requests an

-20-

additional fifteen percent reduction because of Defendants' use
of block entries that allegedly make it impossible to determine
whether the fees charged where reasonable and necessary.  (<u>Id.</u> at
24.)

8)   <u>Unnecessary duplication</u>.

Plaintiff notes that Lyon & Lyon staffed the case with
forty-eight attorneys and that Orrick staffed the case with
fifteen attorneys.  Plaintiff claims Defendants have not
justified why so many attorneys were required.  (<u>Id.</u> at 24-25.)
Plaintiff also notes that some entries, in particular, the
"recovered" billing records from Lyon & Lyon, show the same
attorney billing for the same work twice in the same day.  (<u>Id.</u>
at 25.)   Plaintiff requests an additional fifteen percent
reduction for this type of duplication.[11]  (<u>Id.</u> at 26.)

9)   <u>Charges for secretarial or administrative work</u>.

Plaintiff claims that hundreds of entries in Defendants'
billing records reflect secretarial or administrative work that
it argues are not ordinarily recoverable in a fees motion.  (<u>Id.</u>

---

[11]  Defendants reviewed this alleged duplication and admitted
to several small instances of duplication totaling $5,204.00 in
fees.  (<u>See</u> Defs. Reply Br. (Doc. 380) at 17.)  Defendants have
accordingly reduced their fee amount by $5,204.00.  (<u>Id.</u>)  This
court weighs this correction in favor of Defendants for purposes
of determining the reasonableness of the requested fee.

-21-

at 26-27.) Plaintiff requests the court to institute a further ten-percent reduction to account for these unrecoverable fees. (Id. at 28.)

    10) Excessive work during stays.

    Plaintiff claims that Defendants' counsel billed substantial, unnecessary time during the multiple stays that were instituted in this case. (Id. at 28-29.) Plaintiff requests that this court reduce the amount billed during the stays by twenty-five-percent to account for this "unwarranted" billing.

    In response, Defendants first note that many of these same arguments were presented to and rejected by another judge of this district in the Aventis litigation. (See Defs.' Reply Br. (Doc. 380) at 15-16.) The court in the Aventis litigation summarized Plaintiff's objections to the requested fee award, stating:

> Bayer contends that the hours billed to DAS should be reduced . . . for the following reasons: (a) Orrick's billing statements are too vague; (b) Orrick conducted duplicative and redundant billing practices due to overstaffing, engaged in unjustified motions practice, and improperly billed DAS for "Learning Curve-Type Work"; and (c) Orrick billed for "Massive Amounts" of clerical and administrative work and its costs are otherwise excessive and unrecoverable.

Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc., 2010 WL 2306677, at *7. The judge in the Aventis litigation noted that the Supreme Court in Perdue v. Kenny A. ex. rel. Winn, 559 U.S.

-22-

\_\_\_\_, 130 S. Ct. 1662 (2010), cautioned that "all aspects of an attorneys' fee determination must be accompanied by a 'reasonably specific explanation' of the Court's actions, including a reduction in the amount of fees recoverable." <u>Aventis CropScience</u>, 2010 WL 2306677, at *7 (<u>quoting</u> <u>Perdue</u>, 130 S. Ct. at 1676). The court in the Aventis litigation found that none of the objections raised by Bayer amounted to a "reasonably specific explanation" sufficient to justify an across-the-board reduction in fees. <u>Id.</u> at *8.

The court in the Aventis litigation did, however, find that some attorneys for the defendant had charged an unreasonably high rate when compared to similar attorneys in the same market. <u>Id.</u> at *6. The court thus deducted $51,606.00 from the requested award to account for the unreasonable rates. <u>Id.</u> Further, the court found that the defendant "was improperly charged full billing rates for travel time and that these fees [were] unreasonable under 35 U.S.C. § 285." <u>Id.</u> The court found that the reasonable rate for travel time is half the normal hourly billing rate and deducted "$139,029.27 in order to accommodate this reasonable rate for travel time." <u>Id.</u>

Like the court in the Aventis litigation, this court also finds that none of Plaintiff's objections provide sufficient

justification for an across-the-board percentage decrease.
Although the amount requested by Defendants is high, this was a
complex case regarding complicated patents.[12]  Even though this
case did not go to trial and did not involve a summary judgment
hearing, it was the first case among all of the related cases in
which substantial discovery took place.  As Defendants note, this
discovery included the depositions of 54 witnesses spanning 114
days.  (See Defs.' Br. (Doc. 357) at 16.)

   Therefore, having reviewed the billing records submitted by
Defendants, this court finds that the fee requested by Defendants
is reasonable and should be granted.[13]  See Mathis v. Spears, 857
F.2d 749, 755 (Fed. Cir. 1988) (finding sufficient documentation
to assess reasonableness when the moving party had submitted

---

[12]  Defendants note that their attorneys reviewed
approximately 750,000 documents to familiarize themselves with
the patents and infringement issues in this case.  (See Defs.'
Br. (Doc. 357) at 16.)

[13]  This court's determination of the reasonableness of
Defendants' requested fee award is further bolstered by the fact
that Defendants paid almost all of the cited fees to counsel with
no apparent expectation of reimbursement.  See Mathis v. Spears,
857 F.2d 749, 756 (Fed. Cir. 1988) (citing Chromalloy Am. Corp.
v. Alloy Surfaces Co., 353 F. Supp. 429, 431 (D. Del. 1973)
("Only if the evidence reveals that the rate actually charged is
abnormally high or abnormally low will the Court base an attorney
fee award on an hourly rate at variance with the bill for legal
services that was actually rendered to the client.")).

-24-

"invoices, time entries, and summaries detailing the time expended, billing rates, and disbursements incurred").

Furthermore, unlike the Aventis litigation, this court does not find that a reduction in fees is warranted due to the hourly rate charged by any of Defendants' attorneys. In the Aventis litigation, the court found that "several Orrick attorneys billed DAS at rates in excess of $500 per hour during the course of their representation in this matter. . . . Hence, the Court will reduce the rates billed by Mr. Isackson, Mr. Coggio, and Mr. Thomasch accordingly." Aventis CropScience, 2010 WL 2306677, at *6. The court thus reduced the hourly rate to a rate in line with that charged by other firms in the same geographical area for the relevant year, 2004. Id. These same Orrick attorneys have also represented Defendants in this case, and they have charged Defendants at an hourly rate in excess of $500. While this court agrees with the Aventis court's analysis, this court finds that a reduction is not warranted in this instance. As an initial matter, this court notes that Plaintiff has not objected to the rate charged by any of Defendants' counsel.[14] Furthermore, the vast majority of the fees in this case were

_____

[14] Also, unlike in the Aventis litigation, Plaintiff in this case has not objected to Defendants' fee request regarding any time billed for travel.

-25-

billed by attorneys from Lyon & Lyon before Orrick was hired by
Defendants.  Therefore, the number of hours billed by Orrick
partners with an hourly rate over $500 is insubstantial compared
to the total attorneys fees paid by Defendants in this case.
Additionally, Orrick provided Defendants with a negotiated
discount that resulted in Defendants paying less than the full
hourly rate normally charged by Orrick's attorneys and staff.
(See Defs.' Br. (Doc. 357) at 17.)  Accordingly, this court finds
that Defendants have met their burden of establishing that their
requested fee is reasonable, and this court will award Defendants
the full amount requested.

## IV. Whether and in what amount Defendants are entitled to recover interest on the amount of any legal fees and costs they may recover

Defendants argue that this court should order prejudgment
interest on any attorneys' fees awarded.  (See Defs.' Reply Br.
(Doc. 380) at 17.)  Defendants note that as of thirteen years ago
they had already incurred over $3,000,000 in attorneys fees and
that without an award of interest they will only be partially
compensated.  (Id.)

District courts have discretion to award prejudgment
interest on attorneys' fees under 35 U.S.C. § 285 in instances of
"bad faith or other exceptional circumstances."  See Mathis v.

Spears, 857 F.2d at 760-61.  Courts have generally awarded
prejudgment interest in instances of bad faith litigation,
vexatious litigation tactics, or other like circumstances.  See
Mya Saray, LLC v. Al-Amir, Inc., Civil Action No. 1:10-cv-789,
2011 U.S. Dist. LEXIS 134582, at *32 (E.D. Va. Oct. 18, 2011);
Nilssen v. GE Co., Civil Action No. 06 C 04155, 2011 WL 633414,
at *11 (N.D. Ill. Feb. 11, 2011); Advanced Magnetic Closures,
Inc. v. Rome Fastener Corp., No. 98 Civ. 7766 (PAC), 2008 WL
2787981, at *8 (S.D.N.Y. July 17, 2008); Bristol-Myers Squibb Co.
v. Rhone-Poulenc Rorer, Inc., No. 95 CIV. 8833 RPP, 2002 WL
1733681, at *14 (S.D.N.Y. July 25, 2002); Jack Frost Lab. v.
Physicians & Nurses Mfg. Corp., No. 92 Civ. 9264 (MGC), 1996 WL
167720, at *2 (S.D.N.Y. Apr. 8, 1996).  In this case, Defendants
have not alleged any type of litigation misconduct or other bad
faith conduct.  Indeed, although the Missouri court did find
Plaintiff to have engaged in substantial inequitable conduct
before the PTO, the court also began the discussion section of
its inequitable conduct ruling by complimenting counsel for both
parties for the professional manner in which they conducted
themselves throughout the litigation.  (See Defs.' Br. (Doc.
357-1) at 90.)  Accordingly, this court does not find "bad faith

-27-

conduct or other exceptional circumstances" sufficient to award prejudgment interest in this case.

## V.    Conclusion

For all of the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Determination of Exceptional Case and Award of Fees, Costs and Interest (Doc. 356) is **GRANTED.** Defendants are hereby awarded $5,321,463.03 in costs and attorneys' fees.  A judgment consistent with this opinion will be entered contemporaneously with this Memorandum Opinion and Order.

This the 28th day of September, 2012.

_William L. Osteen, Jr._
United States District Judge

-28-